51,885-04

Abel Acosta, Clerk
P.O. Box 12308
Capitol Station
Austin, Texas 78711

To Abel Acosta, Clerk:

Please enclosed find the following documents to be filed in this Court of Criminal Appeals of Texas, Cause No. 11,707B. These documents shall be executed upon this court's discretion to determine the next course of action. This will be at your earliest convenience and as time permitted for as the docket calls. The following documents are:

(1)-Applicant's Reply and Rebuttal to the Trial Court's denial of relief sought in the 115th Judicial District Court of Upshur County, Texas—total of seventeen (17) pages;
(1)-Applicant's Request for Judicial Notice—total of one (1) page;
(1)-Motion for Writ of Habeas Corpus Ad Testificandum—total of one (1) page;
(1)-Copy of (R.R. Vol. 5 of 8, pg. 69)—total of one (1) page;
(1)-Copy of (R.R. Vol. 5 of 8, pg. 82)—total of one (1) page.

Applicant's Reply to the Trial Court's denial presented to the court shall be executed by the clerk, applicant's Request for Judicial Notice, Motion for writ of habeas corpus ad testificandum, copies of (R.R. Vol. 5 of 8, pgs. 69-82) presented to the court shall be executed by the Clerk.

Applicant, Billy G. Colvin, thanks you for your time in this matter before the court.

Executed on this 22 day of December , 2015.

Respectfully Submitted

Billy G. Colvin

Billy G. Colvin
TDCJ-ID #760687
L.C. Powledge Unit
1400 FM 3452
Palestine, Texas 75803

RECEIVED IN
COURT OF CRIMINAL APPEALS

DEC 28 2015

Abel Acosta, Clerk

IN THE COURT OF CRIMINAL APPEALS
OF TEXAS

EX PARTE

BILLY G. COLVIN

APPLICANT

NO. WR-51,885-04

TR. CT. NO. 11,707B

## MOTION FOR
### WRIT OF HABEAS CORPUS AD TESTIFICANDUM

TO THE HONORABLE JUDGES OF THIS COURT:

Comes now, Billy G. Colvin, Applicant in the above styled and numbered cause, pursuant to Art. 11.31 of the Code of Criminal Procedure and brings this Motion for Writ of Habeas Corpus Ad Testificandum.

> "The person on whom the writ is served shall bring before the judge the person in his custody, or under his restraint," 11. 31 Code of Criminal Procedure of Texas.

Applicant is currently at the L.C. Powledge Unit in Palestine, Texas 75803, under the custody of the Texas Department of Criminal Justice in Anderson County. Applicant's TDCJ-ID number is #760687.

Applicant moves this Court to order a warrant from the 115th District Court bench, ordering the Sheriff of Upshur County to transport applicant to the court issuing the warrant to participate in any hearing, bench trials, or conference involving applicant's case, witnesses, evidence and give live testimony.

Applicant respectfully prays this Honorable Court will grant his Motion for Writ of Habeas Corpus Ad Testificandum in all things.

Executed on this 22 day of December, 2015.

Respectfully Submitted

Billy G. Colvin
TDCJ-ID #760687
Applicant Pro Se

the bedroom except for you and the defendant?

A.   No.

Q.   Was the door closed?

A.   It was open, but a couple of minutes later he shut it.

Q.   Talking about the defendant shut it; is that right?

A.   Yes, sir.

Q.   Tell the jury what happened next.

A.   And then I got -- I put on -- I got into bed and I had my shirt, my Mind-Your-Own-Business shirt, it's like a Wheel of Fortune shirt and it's not a pajama. And then I laid there for a couple of minutes, and then he got undressed and then he laid down and then sexually molested me.

Q.   When you say "he," you are talking about the defendant; is that correct?

A.   Yes, sir.

Q.   Did he take your clothes off or did you take your clothes off?

A.   I took my clothes off.

Q.   On that particular occasion, Andrea, did indeed the defendant have sexual intercourse with you?

A.   Yes, sir.

Q.   Do you know what that is?

A.   Yes, sir.

Q.   Tell the jury what your understanding of that is.

A.   It's -- well, I could tell you what molest means.

Q.   Okay.

A.   Molest means that you --

MR. BRANNON:  I'm going to object, Your Honor. That's nonresponsive to the question.

THE COURT:  Well, Andrea, you need to answer the question that Mr. Cone asked you was if you understand what sexual intercourse means.

THE WITNESS:  Yes.

THE COURT:  And do you know what that means?

THE WITNESS:  Yes.

THE COURT:  Could you explain what that means to you?

THE WITNESS:  It's where you have sex with a person.

Q.   (By Mr. Cone)  Do you understand that to be where a man takes his sexual organ and places it --

MR. BRANNON:  I'm going to object

as leading.

MR. CONE:  Your Honor, this is a child.

THE COURT:  I'm going to overrule it.

MR. BRANNON:  Your Honor, I'm still going to object. It's still leading. It goes right to the element of the offense.

THE WITNESS:  I don't understand.

THE COURT:  It's not your problem. I'm going to ask her one more time before I let him ask a leading question.

MR. BRANNON:  Your Honor, I would ask it be done outside the presence of the jury so that nothing accidentally that's inadmissible gets out to the jury.

THE COURT:  Well, I'm going to ask it specific enough that it won't.

Miss Martin, the question is, you've been asked what sexual intercourse means and you said that's when people have sex. I'm not asking you about any particular incident or anything of that nature, but what Mr. Cone is asking is when you say when people have sex -- and I know this is hard to talk about, okay -- but does that mean

*how did she know these words*

physically? What does that mean to you? Can you explain to the jury what your understanding of that is?

THE WITNESS:  It's where he sticks his penis into my vagina and then --

THE COURT:  Okay.

Q.   (By Mr. Cone)  Did that happen on April the 6th of 1996?

A.   Yes.

Q.   Was that -- where did it happen in that particular house?

A.   It happened in his bedroom.

Q.   In the bedroom you've already testified to this jury about; is that correct?

A.   Yes.

Q.   Andrea, was there an occasion on that evening where there was any sort of camera brought out?

A.   Yes, sir.

Q.   Explain to the jury what happened.

A.   He got the camera out from under his bed and then he sat it up, it was a camcorder, and he put it on the tripod. And then he told me that he loved me and everything. And then he told me to get over on my side to where I was facing him and

there?

A. Because I wanted to see him.

Q. You wanted to see Billy?

A. Yes, sir.

Q. That's what these letters were about, weren't they?

A. Yes, sir.

Q. You wanted to see him, didn't you? How long had it been since you had seen him from April the 6th back? Had it been a year?

A. I'm not sure.

Q. Well, maybe you just saw him, I don't mean anything, have any contact with him, but saw him to say hello at around a Christmas party, family Christmas party before Easter, would that be the last time?

A. I think so.

Q. But before that you had been living in Henrietta for, what, two or three years?

A. Yes, sir.

Q. So you had not seen him the way that you are saying that you saw him on Easter then during that period of time, had you?

A. Yes, sir.

Q. Is that right?

A. Uh-huh.

Q. So anything that happened happened three and a half years ago from now or about three years ago or so from April the 6th, is that right, except what happened as you just testified on April 6th?

A. Yes, sir.

Q. He didn't threaten to hurt you or anything like that, did he?

A. Yes, sir -- I mean no, sir.

Q. And you wanted to see him?

A. Yes, sir.

Q. And you wanted to be with him, didn't you?

A. Yes, sir.

Q. Y'all didn't have any kind of fight or anything like that in the bedroom, did you?

A. No, sir.

Q. You weren't afraid, were you?

A. No.

MR. BRANNON: If I may approach the witness, Your Honor, just quickly to hand her those exhibits.

THE COURT: You may.

MR. BRANNON: Or the bailiff can do

it if you don't mind, Mr. English.

Q. Now, I believe you've got in your hand the letters that apparently your stepmother found in the trash can in Henrietta; is that correct?

A. Yes, sir.

Q. One of them is marked S-3, and of course nine is a photocopy, but does it kind of look like that and end with a second page with a heart on the end of it, is that S-3?

A. Yes.

Q. Is it a two-page?

A. Yeah.

Q. No, S-3 is -- just a minute.

BAILIFF: It's on the back side.

Q. Okay. It's on the back side. It's part on the back side. Now, I want you to look at the front and back of that real carefully for me. Even where you signed Mario Andretta underneath your name Andrea, is all of this in your handwriting?

A. Yes, sir.

Q. Every bit of it?

A. Yes, sir.

Q. On the front page too?

A. Yes, sir.

Q. Isn't it also true that nowhere in these letters does it say that you want him to stop seeing you? Basically you want to see him, don't you?

A. Yes, sir.

Q. Well, let's go on and look at the next one. I believe it's a sort of a half-page letter. Is that S-4?

A. Yes.

Q. Does it have anything on the back? Would you hold it up for me where I can see it? It doesn't have anything on the back then, right?

A. It's got --

Q. Just some scribble down at the bottom?

A. Yeah.

Q. Does this scribbling mean anything at the bottom of the back page on S-4?

A. No, sir.

Q. Look then at the front part of S-4 which is about a half a page letter, says to Dear Billy and it ends with bye, B-Y-E, Andrea and there's some notes sort of in the lower left-hand corner part. Now is all of that, every bit of that in your handwriting?

A. Yes, sir.